The argument is 14-7-1-3-0, Cogburn v. McDonald. Good morning, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Dennis Cogburn. This appeal requires an examination of the use of this Court's judicially-created rule of law concerning the deemed-denied or implicit-denial rule. In this case, the Board was, in our view, permitted unlawfully to use the implicit-denial rule to evade its obligation to adjudicate Mr. Cogburn's pending claim for depressive What? Are you on a remand? Do you want automatic retroactive release? In 1985, there was an opinion and it was a decision that was not appealed. Correct. And your argument in this case is what should we do with respect to revisiting that 1985 case? Well, I'm asking this Court not to revisit the 1985 case. I'm asking this Court to order the Veterans Court to direct the VA to adjudicate the 1974 claim for depressive neurosis, which remains pending because there has been no adjudication of that claim. And the Board used the implicit-denial rule to suggest that the depressive neurosis claim was, in fact, adjudicated when the Board in 1985 adjudicated a post-traumatic stress disorder claim. Those are separate and distinct claims under this Court's case law in both Boggs and Efrain. In those cases, this Court recognized that the diagnosis of the condition controls the nature of the claim. But those cases were not about implicit-denial. They were not. In contrast to some of the other opinions we've had, which seem to support the government's view that even though they're separate diagnoses, the implicit-denial rule still would apply. Except in those cases, in Adams and Bess Hotel in particular, those cases were based upon informal claims as opposed to a formal claim. Those cases recognized that you could have two separate claims and that the denial of one claim could be an implicit denial of the other, correct? Well, they did, Your Honor, but they did so in the context of an informal or an inferred claim. What difference does that make? Well, the difference that it makes is that there's a VA regulation that was acknowledged by this Court in Adams at 3.160 that requires that or that defines the term pending claim and that a pending claim is a claim that has not yet been adjudicated, meaning there has been a decision on that claim. The 1974 claim for depressive neurosis has never received a rating decision by the VA. But that sounds like an argument that the implicit-denial rule can't apply if you have two separate claims, whereas Adams is very clear that if you would reasonably read the denial of one claim as encompassing the other, there's an implicit denial, correct? I believe that the terminology or the use of the term claim in Adams was less precise because it was assuming that there was no difference between an informal claim, which is the type of claim that was raised in both Des Hotel and Adams, and a formal claim. So are you saying that the implicit-denial rule can never apply to a formal claim? I'm certainly saying it doesn't apply in this case. I believe across the board that that would be the case because of the VA's own regulation and not only the regulation at 3.160, but the regulation that requires notice to the VA of their disposition of the claim. But in other words, aren't those requirements also equally applicable to informal claims? No, they're not, Your Honor, because an informal claim may or may not be adjudicated. It is a discretionary determination based upon the adjudicator to determine whether or not the evidence does or does not raise that claim. The critical distinction here is that in 1974, Mr. Cogburn used the VA form 21-526 to ask for service connection for the only psychiatric condition that he was diagnosed with, which was depressive neurosis. Yes, I'm sorry. No, that's fine. Even if the VA's decision then on the other claim can be very clearly read as implicitly denying the other formal claim, as long as they don't provide a specific notice that this other claim has been denied, the implicit-denial rule can't apply here. I believe that is the correct interpretation that this Court should arrive at based upon the VA's regulations, which are in place, which treat a formal claim differently than they treat an informal claim. An informal claim is treated by the VA under 3.155 currently and presumes that that claim will be formalized. But isn't, I mean, I get your argument, that's a reasonable distinction, but isn't the point of the implicit-denial rule is basically it's a notice provision so that the veterans have noticed that their claim has been denied so that they can appeal. And so if it's reasonably certain from the decision that that claim has been denied, what difference does it make whether it's formal or informal, as long as you can reasonably infer notice from the decision? Well, but the problem with that notice is that it assumes that there is a remedy vis-a-vis the appeal. There is, in this case, no remedy available because the appeal took place prior to judicial review. The Board of Veterans' Appeals decision in this case was in 1985. There would have been no appeal from that decision. Had he believed that they, in fact, if he thought he was on reasonable notice that his depressive disorder claim had been denied, he had no ability to appeal that. That was the end of the discussion procedurally in 1985. It was not until 1988 that judicial review was created. So I don't understand why that makes any difference. So if, in fact, this 85 decision had explicitly denied this formal claim, you know, we wouldn't be arguing about an implicit-denial rule. You wouldn't be here at all because there would be no appeal rights. That's correct. I don't know why that makes any difference about whether the implicit-denial rule is that bottom notice provision. Well, I'm sorry. I was trying to respond to that portion of your question that dealt with the creation, the purpose of the creation of the rule was to deal with notice and that the veteran was not on notice that his depressive neurosis claim had been denied because, in the first place, there was never a decision from 1974 until, arguably, 1985 where we disagreed that there was any decision because if you look at this, at the board decision in 1985, clearly there is an acknowledgment that he had a diagnosis of depressive neurosis and schizophrenia, but there was never any discussion about whether those claims were pending, that those claims were being decided, the issue was determined. Sure, but I think you're starting to veer into a little bit of, at least, application of law to fact when you're arguing about what the content of the 85 notice is. Didn't the Veterans Court find that that fact-supported application of the implicit-denial rule here? The court did. And we can't review that. Well, I believe... And we can't review your legal conclusion or legal argument that the implicit-denial rule should never apply to formal claims. That seems to be a perfectly good legal argument, but whether the board properly found, as a matter of fact, that it was implicitly denied here seems a step too far. I'm not sure that's correct, Your Honor. I believe under this case, this court's decision in Morgan, that is not a step too far, that Morgan says that when Congress changed the 7292 to include rule of law jurisdiction, that you do, in fact, have the jurisdiction to review... We have jurisdiction to review what the rule of law is, but not how it should be applied in a particular case. With respect, I disagree. I believe that this court in... I'm sorry, I'm blanking on the name of... In Willsley. In Willsley, specifically said that this court had jurisdiction to review whether or not an issue of how the clear and unmistakable error rules were applied was, in fact, reviewable. They found that they had jurisdiction to do that. They affirmed the decision below based upon the determination that was made by the lower court. But I believe under Willsley, as it interpreted Morgan, that this court does have that jurisdiction to interpret the rule of law of implicit denial as it was applied. Mr. Sharmier, can I bring you back to the issue as to whether there's a difference between formal and informal claims? What is the regulation that you're relying on that you say makes that distinction, and where do I find it in your brief? It is not in our brief. It is in the Adams case. It's in the Adams case and the regulation cited... Where is it in the Adams case? I don't know why you didn't cite it in your brief if that's a linchpin of your argument, but we'll pass that. Where is it in the Adams case? I'm sorry, I didn't bring the Adams case with me, but it is... I just read it last night. It starts a paragraph and specifically refers to the regulation at 38 CFR 3.160 and describes specifically what a pending claim means. A pending claim, as defined by the VA regulation, is a claim which has yet to be adjudicated. The formal claim is a claim, in this case, that has yet to be adjudicated. The VA had several opportunities to adjudicate the claim that was filed in 1974, and they at the time that the 1974 claim was made, of depressive neurosis. The only claim that was adjudicated by the board in 1985 and, in fact, decided by... 3.160C is what you're talking about. Yes, correct. And Adams says on page 960, a claim for benefits, whether formal or informal, remains pending until it's finally adjudicated and it cites that regulation. How does that help you? Because I'm suggesting to this court that this court used the context of informal claim imprecisely as opposed to the regulation that applies only to formal claims. 3.160C does not apply to informal claims. But Adams was wrong when it said so? Adams was wrong to the extent that it included informal claims as a reference to 3.160C. There is no requirement to adjudicate an informal claim until that informal claim is, in fact, adjudicated by the VA. That is within the discretion of the adjudicator. 3.160 and the notice requirements that we do rely on in 3.103 do require notice to the veteran when the VA takes action. And there has never been any notice to Mr. Cogburn in this case that the decision was made in this 1974 claim. Yes, Judge? Oh, I'm sorry. I thought you were about to ask me a question. We're into your rebuttal, so why don't we hear from you. I will. Reserved.  Good morning, and may it please the court. I wanted to first just address the arguments that counsel has just made that the implicit denial rule shouldn't apply to informal claims. I first note that I don't believe he's made that argument in his briefs, so the court shouldn't consider it. But in any event, I would quote from this court's decision in Monroe, which is a 2010 case. This court said, quote, with regard to Monroe's contention that the implicit denial rule cannot apply to informal claims, only to formal claims, we see no proper basis to distinguish between formal and informal claims. So this court's already addressed that issue and has held that there really is no reason to distinguish between the two. Have we applied it in a case where there's a formal claim? Because the one you just said suggested it was an informal claim, so maybe it's dicta as to formal claims. I believe in Desch-Hotel the claims were both formal claims. I'm not 100% sure on that. I'd have to go back and check, but I believe in that case they were. Now, Mr. Cogburn contends that no reasonable person could have understood that their claim was being denied here. Of course, that argument is outside this court's jurisdiction. In the Jones case, this court explained that whether the later board decision addressed the merits of the original claim would seem to be a factual issue. That's beyond the scope of this court. What about this rule of law jurisdiction? I assume we didn't actually consider that principle there. It's a little fuzzy to me what this rule of law jurisdiction is, but I think we have said, at least in some cases, that it allows us to review certain applications of law and facts. Well, the court certainly has jurisdiction to consider whether the correct rule of law was used in a given case. Here, for example, the court can look at whether or not, in fact, the correct rule of law, that is the implicit denial rule, was used, but the court doesn't have jurisdiction to consider the actual application of that rule of law to the facts of a specific case. At least for purposes of this case, I think you would concede that we have jurisdiction to decide whether the implicit denial rule properly applies to formal claims. If we conclude that it does, then we can't review whether there was notice under the 85 decision. Right. Yes, that's right. Certainly, this court has jurisdiction to consider whether or not the correct legal standard was applied in this case. Now, obviously, that standard here was applied, the reasonable person standard, the standard this court applied in Adams. That's the exact same standard that the Veterans Court and the board applied in this case. Yes. Ken, actually, I know this isn't really raised, but what's the origin for this implicit denial rule? Because, although in normal litigation, it might seem to make sense, in the context of veterans' benefits, who are often pursuing these claims in an unrepresented pro se fashion, I mean, to expect them to read a board decision, which is a fairly technical document, and determine that, well, even though it's only specifically addressing this claim, it's also implicitly addressing this other claim, and putting them on notice to appeal, if they have to, at risk of losing their right to appeal. It seems kind of a difficult doctrine to apply. Well, what this court in Adams said is that the implicit denial rule is really a balance, and it's a balance between the interest of finality, which is an interest that obviously supports veterans, and the interest in providing notice. So it's a balance between the two. And the test that's applied, again, a reasonable person test, I think, reflects that appropriate balance. Now, Mr. Cogburn- But it's a difficult situation, right? Because, by definition, if you've got an implicit denial, then you've got no analysis, no rationale, no basis upon which one can assume, yeah, they must have rejected my claim, even though they didn't speak to it, but one has no basis to determine what was wrong with it. Well, but the tests or the factors that this court used in Adams and the veterans court used here go to that issue. One of the factors is that we look to the RO and the board decisions themselves. Would they put a reasonable person on notice that their claim was being denied? Here, I'll briefly discuss the facts, but here, both the RO and the board decisions did that. The board stated that the service medical records here were negative for any evidence of psychological impairment, not just for PTSD, but for any psychological impairment. And, of course, the claims that he's raising here are not just, obviously, PTSD, but a claim for depressive neurosis and schizophrenia. The board and the RO here also listed the relevant medical records and expressly discussed his various diagnoses, including his diagnosis of schizophrenia and depressive neurosis. So, those facts support that a reasonable person would understand that all of their claims, in fact, were being denied. Now, Mr. Cogburn argues that, or seems to argue that, the implicit denial rule shouldn't apply because his claims were different. But that's precisely what the rule is designed to address. And in Adams and Deschotel, two cases from this court, both of those cases involved different claims. For example, in Adams, the claim that was expressly denied was a claim for rheumatic heart condition. The claim that was implicitly denied was a claim for bacterial endocarditis. So, different conditions or claims. Now, finally, Mr. Cogburn argues that the VA was required to weigh and assess the nature of his condition. He cites a case from the Veterans Court, Clemens, for that proposition. Of course, that decision didn't concern the implicit denial rule. And here, as I said, the RO and the board did, in fact, weigh and consider the various conditions at issue. And moreover, that really is a Q claim, an argument that the board or the RO failed to weigh his different conditions. That would be a claim of clear and unmistakable error in that decision and also wouldn't be within this court's jurisdiction to entertain. So, for these reasons, we respectfully request that the court dismiss Mr. Cogburn's claim regarding whether or not a reasonable person could have understood that the claim was being denied and affirm the Veterans Court's decision in all other respects. Thank you. Your Honor, the court below held that Mr. Cogburn could not show that the implicit denial rule is not for application with respect to one claim, in this case, his depressive neurosis, because a decision only explicitly denied another claim, that was post-traumatic stress disorder, to permit Mr. Cogburn to do that, the lower court said, would nullify the implicit denial rule. Well, that's precisely what we're asking this court to do as it relates to recognized distinguished claims. The distinction here is both between formal and informal, but also under bogs and ephraim between depressive neurosis and post-traumatic stress disorder. This court, in ephraim, dealt directly with the question of whether or not depression was the same disability as post-traumatic stress disorder, which was later diagnosed. But that case said nothing about implicit denial. No, Your Honor, but it recognized the difference between claims. I'm sorry. Even if we recognize that there are two distinct claims, if the board can conclude that they're so interrelated that denial of one would give notice of denial of the other, the fact that they're two distinct claims shouldn't prohibit application of the implicit denial rule. Well, with respect, Your Honor, that's precisely the basis upon which this court rejected the The Veterans Court relied on that same analysis that these conditions had overlapping symptomatology. And therefore, you should give the benefit, if you will, to the agency. The benefit in this case should be given to the veteran. And one of the reasons is that in this case— What you're asking us to do, it seems to me, is to completely eliminate the implicit denial rule, at least with respect to formal claims. And I think the government is right that in Deschotel or Deshotel or however you want to pronounce it, there were two formal claims. That's what we said. I'm sorry, Your Honor. There were formal claims made, but not for the condition that was asserted to still be pending. The condition that was asserted to be pending— I think that's not correct, but that's neither—we don't need to figure out this. The condition in Deschotel was for a psychiatric disability that came out of the automobile accident. There was a claim for the injuries related to the automobile accident. You said the claim should be construed to cover both the psychiatric disability and the other thing. And the should be construed is what makes it an informal claim for the psychiatric condition. No one was asking in Deschotel for the re-adjudication of the claims that were decided in the first instance. What is important in this case is to recognize that Mr. Deschotel, or excuse me, Mr. Cogburn, has an opportunity, if allowed, to pursue the adjudication of his unadjudicated claim. And that would require the VA to consider all of the evidence. At no time did the VA ever consider Mr. Deschotel's decision. If it remains pending, as we assert that it does, and apparently if you apply the implicit denial rule, you can't reject that it remains pending. The only question is, was there an adjudication? And under both Boggs and Efrain, there cannot have been an adjudication unless the Board of Veterans' Appeals decision in 1985 addressed that decision, which it did not. Thank you very much, Your Honors. We thank both counsel and the cases.